FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2008 APR 21  AM 9: 20

CLERK _____
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| TANYA JENKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 107-034 |
| | ) | |
| J C PENNEY, Augusta Mall, Retail Store/ | ) | |
| Salon; LINDA VERNELLO, General | ) | |
| Manager; and SUE BURGESS, Loss | ) | |
| Prevention Supervisor, | ) | |
| | ) | |
| Defendants. | ) | |

---

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

---

Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP") in the above-captioned

employment discrimination case. As Plaintiff's second amended complaint[1] was filed IFP, it

must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785

(11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v.

Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or

any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief

may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) & (ii).

---

[1]Because of pleading deficiencies, the Court directed Plaintiff to file a second
amended complaint. (See doc. no. 14).

## I. BACKGROUND

The Court previously directed Plaintiff to amend her complaint because Plaintiff's original complaint fell short of the requirements of the Federal Rules of Civil Procedure, which require a "short, plain statement" of the claims entitling a plaintiff to relief.[2] (Doc. no. 10). The Court then concluded that Plaintiff's amended complaint suffered from the same deficiencies as her original complaint.[3] The Court noted that the formulation of Plaintiff's amended complaint made it difficult to discern the nature of her case, as she again included a conglomeration of alleged misdeeds by Defendants and a myriad of descriptions of seemingly unrelated incidences and/or activities of questionable relevance to any claims Plaintiff alleged. (Id. at 2). Accordingly the Court directed Plaintiff to file a second amended complaint. (Doc. no. 14). Plaintiff filed her second amended complaint, and it is that document that the Court will now screen. (Doc. no. 15).

Plaintiff asserts claims for racial and religious discrimination, hostile work environment, and retaliation, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e

---

[2]Under Fed. R. Civ. P. 8(a), Plaintiff must proffer a short and plain statement (1) detailing the Court's jurisdiction, (2) showing that she is entitled to relief, and (3) demanding judgment for the relief that she seeks.

[3]Similar to the original complaint, Plaintiff's first amended complaint amounted to the quintessential shotgun pleading that has been soundly condemned by the Eleventh Circuit Court of Appeals. See, e.g., Byrne v. Nezhat, 261 F.3d 1075, 1128-34 (11th Cir. 2001) ("[S]hotgun pleadings . . . impede[] the due administration of justice and, in a very real sense, amount[] to obstruction of justice.") (citation omitted); Magluta v. Samples, 256 F.3d 1282, 1284-85 (11th Cir. 2001) (per curiam) (refusing to address and decide serious constitutional issues on the basis of a "quintessential 'shotgun' pleading of the kind [the Eleventh Circuit] ha[s] condemned repeatedly," beginning as early as 1991, because "[i]t is in no sense the 'short and plain statement of the claim' required by Rule 8 of the Federal Rules of Civil Procedure"); see also Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295-96 n.9 (11th Cir. 2002) (collecting cases condemning shotgun pleadings).

*et seq.*, against (1) the J C Penney Department Store, (2) Linda Vernello, the general manager, and (3) Sue Burgess, the loss prevention supervisor. (See generally doc. no. 15). Plaintiff also attempts to raise several state law claims. (Id.).

From Plaintiff's second amended complaint, the Court gleans that Plaintiff was employed at the salon at the J C Penny Department Store located in the Augusta Mall. (Id. at 1-3). Plaintiff asserts that Defendants Vernello and Burgess retaliated against Plaintiff on August 4, 2006 and December 23, 2006, resulting in Plaintiff's termination. (Id. at 6). Notably, however, Plaintiff does not identify the alleged retaliatory acts. In addition, Plaintiff states that Laura Morgan, the assistant manager, not a named defendant in the above-captioned case, helped cover the retaliation and the motive. (Id.). Plaintiff also claims that she was threatened and received unjust evaluations. (Id.).

Next, Plaintiff asserts that as a result of the "incident [she] incurred on 8-4-06," when she was "harassed and threatened" with a demand by Defendant Burgess, to view the contents of her purse, she was humiliated and embarrassed. (Id. at 7). She further notes that she refused to allow the search because "[her] purse contained nothing whatsoever, never has, merchandise that belonged to [the] J C Penny store." (Id.). Plaintiff apparently contends that after this incident, Defendant Burgess threatened Plaintiff by telling her that if she left the building, Plaintiff would be automatically terminated for failure to comply with Defendant Burgess's demand. (Id. at 8). Plaintiff notes that at the time of this threat, she was "off the clock." (Id.). Plaintiff explains that she did not comply with Defendant Burgess's directive because it is neither a part of her life, or what she represents; therefore, the search must have been predicated on "mere assumptions and stereotype." (Id. at 7). Also in support of her claim,

3

Plaintiff explains that a co-worker, "non-Caucasian," informed Plaintiff that she (the co-worker) was also accused by management, of theft. (Id.). However, Plaintiff notes that the incident involving the co-worker was "resolved behind closed doors." (Id.). Moreover, Plaintiff notes that this co-worker was later promoted to a supervisory position. (Id.).

Plaintiff also asserts that she was discriminated against based on her religious beliefs. (Id. at 8). Plaintiff explains that "although they used insubordination [as the] violation to terminate [her]," she made several attempts to address her reason for [not] complying with their demands; yet "they refused to listen and fired [her] anyway." (Id.). In furtherance of her explanation, Plaintiff states:

> I refused to obey them because there is no doubt in my mind or heart that the demand disrespected my religious belief making discrimination a term and or condition of my employment I believe to be unethical and unlawful. Refusal to obey what I truly believe is unlawful should be honored and protected.

(Id.). Notably, Plaintiff never explains what demands were made that related to her religious beliefs.

Finally, Plaintiff states generally that she is also asserting claims under Georgia State Law. (Id.). Plaintiff simply states that their actions were defamatory, ruined her reputation, invaded her privacy, and placed her "in false [light] of coworkers." (Id. at 9). Plaintiff concludes by stating that, "their procedures were performed in negligen[t] misuse of legal procedure, their actions were intentional, this behavior caused severe infliction of emotional distress, and intolerable working conditions." (Id.).

Plaintiff seeks "compensatory and punitive damages, front pay, back pay, past and present out of pocket-loss, all emotional harms humiliations and all other damages [that] seem just and allowable . . . ." (Id. at 5).

4

## II. DISCUSSION

In its prior Orders directing Plaintiff to amend her complaint, the Court explained to Plaintiff that to proceed with a viable claim for a violation of the Civil Rights Act, Plaintiff must proffer certain requisite elements.[4] (See doc. no. 10, pp. 2-4; doc. no. 14, pp. 5, 6). For example, when asserting a claim for racial discrimination a plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job. EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1286 (11th Cir. 2000). Similarly, when asserting a claim for a hostile work environment, a plaintiff must show that: (1) she belongs to a protected group; (2) she has been subjected to unwelcome harassment; (3) the harassment was based on a protected characteristic of the employee; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatory abusive working environment; and (5) the employer was responsible for such environment under either a theory of vicarious or direct liability. Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002). When asserting a claim for retaliation a plaintiff must show: (1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision. Gupta v. Florida Bd. of Regents, 212 F.3d 571, 587 (11th Cir. 2000).

Finally, Title VII requires that an employer "make reasonable accommodation for the

---

[4]The Court is aware that Plaintiff is not required to plead the following causes of actions with specificity; nonetheless, Plaintiff must provide enough information to give Defendants a fair notice of the basis of her asserted claims.

5

religious observances of its employees, short of incurring an undue hardship." Lake v. B.F. Goodrich Co., 837 F.2d 49, 450-51 (11th Cir. 1988) (citing Trans World Airlines, Inc. v. Hardison, 432 U.S. 63, 75, 97 S.Ct. 2264, 2272, 53 L.Ed.2d 113 (1977); see Ansonia Bd. of Educ. v. Philbrook, 107 S.Ct. 367, 369 & n.1 (1986); 42 U.S.C. § 2000e(j)).[5] The statutory language does not make clear the precise reach of this obligation. Id. (citing Hardison, 432 U.S. at 75-76, 97 S.Ct. at 2272; see Philbrook, 107 S.Ct. at 371-73). The Supreme Court, however, has held that to require an employer to bear greater than a *de minimis* cost in accommodating an employee's religious beliefs constitutes undue hardship. Id. (citing Philbrook, 107 S.Ct. at 371; Hardison, 432 U.S. at 84, 97 S.Ct. at 2276-77; see Wisner v. Truck Central, 784 F.2d 1571, 1573 (11th Cir.1986); Benefield v. Food Giant, Inc., 630 F.Supp. 78, 79 (M.D.Ga.1985) *aff'd,* 792 F.2d 1125 (11th Cir.1986)).

Although Plaintiff's second amended complaint cures the shot gun pleading deficiency, it still fails to comply with the Federal Rule of Civil Procedure 8(a). As the Court previously noted (doc. no. 14), the second amended complaint supersedes and replaces in its entirety the previous complaint and amended complaint filed by Plaintiff. Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999) (recognizing that amended complaint supersedes original complaint); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).[6] Thus, for purposes of screening, the Court only has before it the facts and issues proffered in Plaintiff's

---

[5] 42 U.S.C. § 2000e(j) provides: The term "religion" includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business.

[6] Plaintiff was further cautioned that no portion of any prior complaint shall be incorporated into her amended complaint by reference. (Doc. no. 14, p. 9).

second amended complaint. The Court's prior Order also explained to Plaintiff that she should keep in mind the two principal purposes of a complaint: to give each and every defendant fair notice of the basis of her claims against the defendants so that they may respond to Plaintiff's allegations, and to allow this Court to determine whether the allegations, if proven, entitle Plaintiff to relief. (Doc. no. 14, p. 8).

Upon review of the second amended complaint the Court notes that the facts alleged by Plaintiff are not sufficient to support her claims. For example, Plaintiff asserts an alleged retaliation claim. (Doc. no. 15, p. 6). Although Plaintiff alleges that Defendants Vernello and Burgess retaliated against Plaintiff on August 4, 2006 and December 23, 2006 resulting in her termination, she does not identify the nature of the retaliatory acts. Plaintiff simply fails to explain what Defendants Vernello and Burgess did, let alone how what they may have done resulted in her termination. Thus, Plaintiff failed to state a claim upon which relief may be granted with respect to her retaliation claim.

Plaintiff's alleged race discrimination claim fails for similar reasons. Plaintiff asserts that she was "harassed and threatened" with a demand by Defendant Burgess to view the contents of Plaintiff's purse. (Doc. no. 15, pp. 6, 7). Plaintiff maintains that she did not allow Defendant Burgess to view the contents of her purse and explains that it was her belief that Defendant Burgess's actions were based on "assumptions and stereotypes." (Id. at 7). The Court presumes Defendant Burgess demanded to review the contents of Plaintiff's purse because Defendant Burgess believed that it contained merchandise belonging to J C Penny. Other than stating "neither is it a part of my life or what I represent, and so therefore, her reason for this search was based on mere assumptions and stereotype," Plaintiff does not

7

provide any facts - other than her conclusory allegation regarding her belief - that Defendant Burgess's actions were racially motivated. Moreover, although it appears, that Plaintiff asserts that her adverse employment action was her being threatened with automatic termination if she were to leave the building, it is unclear whether the termination occurred as a result of her leaving the building. For that matter, the reason for Plaintiff's termination is unclear as Plaintiff simply provides that she was apparently terminated by Laura Morgan in December 2006. Thus, Plaintiff failed to state a claim upon which relief may be granted in her asserted race discrimination claim.

The Court also concludes Plaintiff fails to state a claim upon which relief may be granted for her religious discrimination claim. The crux of Plaintiff's claim is that in spite of her several attempts to address her reason for not complying with "their" demands, they refused to listen, and fired her anyway. (Doc. no. 15, p. 8). Plaintiff apparently deems the actions to be religious discrimination because the demand - the Court presumes the demand to review the contents of her purse - disrespected her religious beliefs. Plaintiff's allegations fall short of a claim for religious discrimination. Thus, Plaintiff failed to state a claim upon which relief may be granted with respect to her religious discrimination claim.

Finally, regarding Plaintiff's State Law claims, because Plaintiff has failed to state any viable federal claims against Defendants, her remaining potential state law claims should also be dismissed because the Court lacks jurisdiction to entertain these claims. This Court derives its authority to decide Plaintiff's employment discrimination claims from 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may <u>decline</u> to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ." <u>Id.</u> § 1367(c)(3) (emphasis added).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists:

> At this time, the case retains no independent basis for federal jurisdiction. . . . A proper resolution of the two state law causes of action will require a careful analysis of Alabama law--something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake. . . . We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

<u>Nolin v. Isbell</u>, 207 F.3d 1253, 1258 (11th Cir. 2000); see also <u>Republic of Panama v. BCCI Holdings (Luxembourg) S.A.</u>, 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."); <u>Rice v. Branigar Org., Inc.</u>, 922 F.2d 788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Here, as the Court has determined that the claims serving as the basis for original federal court jurisdiction should be dismissed, the Court also concludes that any potential state law claims should be dismissed without prejudice so that Plaintiff may, if she chooses,

9

pursue them in state court.

Simply put, Plaintiff has not given Defendants a fair notice of the basis of her asserted claims. Even *liberally* construing Plaintiff's second amended complaint, she has not alleged sufficient information to show that she is entitled to relief.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS AND RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief may be granted and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED this 21st day of April, 2008, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

10